Arnold Gr. Fraiman, J.
By this article 78 proceeding, the petitioner corporation which manages the businesses of 63 other *66 corporations which together own and constitute a fleet of 130 taxicabs, seeks a judgment directing respondents the New York City Taxi and Limousine Commission and its individual members to grant its application to install a two-way radio system in its,fleet and to issue appropriate licenses therefor. The commission was created by the city council in February, 1971. Its purpose, as set forth in section 2300 of the city charter, is ‘ ‘ the continuance, further development and improvement of taxi and limousine service in the city of New York.” Its duties superseded those previously delegated to the Hack Bureau of the Police Department. Included among the commission’s functions, as set forth in section 2310 of the Administrative Code, is the ‘ ‘ Licensing of communications systems. ’ ’ This section provides as follows: “ The commission may require licenses for the operation of two-way radio or other communications systems used for dispatching or conveying information to drivers of licensed vehicles upon such terms as it deems advisable and upon payment of reasonable license fees of not more than one hundred dollars a year.”
During the period of the Hack Bureau’s regulation of the taxi industry, no license was required for the installation of a two-why radio in a taxicab, but apparently prior Consent by the bureau was a prerequisite. However, it is alleged in the moving papers and undenied by respondents that in no instance was permission ever refused. There are now over 1,400 taxicabs operating on the streets which are equipped with two-way radios. All are individually owned rather than fleet-operated. Since its inception the commission has not issued any licenses for the installation of two-way radios either to owner-operated or fleet-operated taxis, or otherwise authorized their use.
In this context, petitioner, in December, 1971, submitted a formal application to the commission for a license for the operation of two-way radios in its fleet of taxis. The application set1 forth in persuasive detail the benefits and advantages to the public of a radio dispatch system and how it would provide increased safety for the drivers. It requested a hearing before the full commission in the event it “ for any reason was disinclined to grant the license.” The commission’s response to the application by its “ Director of Licenses ” was prompt and to the point. The full text of his letter follows: “ I am in receipt of a paper purporting to be ‘ Application for license for 2-way radios. ’ Please be advised that the commission is issuing no licenses for 2-way radios.” Petitioner thereafter commenced the instant proceeding, alleging that the acts of the commission *67 in summarily rejecting its application were arbitrary, capricious and unreasonable and constituted an abuse of discretion on its part. While the proceeding was pending, but before it was submitted to the court, the commission consented to hold a hearing on petitioner’s application, and such a hearing was held on April 26, 1972 before an assistant counsel to the commission. At the hearing, petitioner offered extensive testimony by its president and principal officer and by an expert on two-way radio operation in petitioner’s employ as to how the proposed system would operate and how possible abuses would be forestalled. Their presentation was thorough and in the court’s view constituted a satisfactory basis for the issuance of a license. Nevertheless, the hearing officer recommended that the application be rejected and the commission denied the application by letter from Deputy Commissioner Stanley B. Katz dated June 2,1972. The ground for the rejection, as set forth in Commissioner Katz’ letter, was in no way addressed to the specific proposal submitted by petitioner, but instead was based upon the commission’s determination that the public would not be best served by the installation of radios in fleet-operated taxis. This position of the commission was reiterated by Commissioner Katz on the argument before the court on June 16, 1972 on the instant application, when he stated that the commission did not intend to issue any licenses for two-way radios to fleet operators at that time or in the foreseeable future.
As noted, section 2310 of the Administrative Code provides that the commission may require licenses upon such terms as it deems advisable. It is apparent that the city council in enacting this provision used the permissive “ may ” rather than, the mandatory “ shall ” because it was cognizant that the Hack Bureau had permitted the installation of radios as a matter of course, and that there were in fact over 1,400 radio taxis operating on the streets without benefit of license but merely by permission of the Hack Bureau. The obvious conclusion to be-drawn, accordingly, is that the council intended to allow the commission discretion to determine whether to allow taxis to install radios by permission of the commission on the one hand, or by means of a licensing system on the other. In light of the facts as they existed at the time the legislation was enacted, it cannot rationally be maintained that by using the word “may” it was the intention of the drafters that the alternative they were offering the commission, at its discretion, was either licensed radios or no radios at all. Yet it is only if this interpretation were adopted that respondents’ position cah be *68 sustained. However, the council having provided in section 2310 for the use of two-way radios in taxicabs either by permission or license, the commission may not arbitrarily determine that no licenses be issued. (Matter of Picone v. Commissioner of Licenses, 241 N. Y. 157.) Authority to regulate does not include power to prohibit. (Matter of Smith v. Morgan, 253 App. Div. 239; 9 McQuillan, Municipal Corporations [3d ed. rev.], p. 182.) As the court stated in the Picone case (supra, p. 162) “ Laws are made by the law-making power and not by administrative officers acting, solely on their own ideas of sound public policy, however excellent such ideas may be.”
No distinction is drawn in the statute between fleet-operated and owner-driver taxicabs. Nevertheless, the commission has apparently arbitrarily determined that it will continue to allow more than 1,400 individually operated taxis to maintain two-way radio systems while denying that privilege to petitioner, -merely because it is a fleet operator. Its argument that drivers of fleet-operated taxis are more likely to abuse the regulations governing the operation of a radio system than owner-operators is specious and unsupported by any real evidence. Moreover, if such an argument were pursued to its logical conclusion, the commission would ban the operators of fleet taxis entirely, and require that all cabs be owner-operated.
Petitioner having shown that it is a fit and proper applicant, ‘ ‘ Arbitrary refusal of a license in such case * * * is a wrong to him ” (Matter of Small v. Moss, 277 N. Y. 501, 507), and 1‘ he has a remedy through mandamus to right the wrong which he has suffered.” (Matter of Picone v. Commissioner of Licenses, supra, p. 160.)
For the foregoing reasons, the commission is directed to grant petitioner’s application and to issue a license to it for a two-way radio system as requested.